UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WOODCRAFT SUPPLY LLC, § | |
| § | |
| Plaintiff, § | |
| v. § | Court No.: 1:22-CV-00252 |
| § | |
| UNITED STATES, § | |
| § | |
| Defendant. § | |

**COMPLAINT**

Plaintiff, Woodcraft Supply, LLC ("Woodcraft Supply" or "Plaintiff"), appears by and through its attorneys, Braumiller Law Group, PLLC, and complains against Defendant, the United States, alleging as follows:

**JURISDICTION**

1. This action is commenced pursuant to 28 U.S.C. § 1581(a) to contest the denial of a protest filed pursuant to 19 U.S.C. § 1514, concerning the valuation and liquidation of the merchandise by U.S. Customs and Border Protection ("CBP" or "Customs") described below.

2. As the importer of record and the party filing the protests, Plaintiff has standing under 28 U.S.C. § 2631(a) to bring this action filed within its limits.

3. The protest set forth on the Summons filed herein was timely filed.

4. The single protest set forth on the Summons filed herein was denied by the Port of Columbus, OH on March 22, 2022.

5. The Summons was timely filed, and all liquidated duties have been paid.

6. An Amended Summons was filed on November 10, 2022.

*Woodcraft Supply LLC v. United States (1:22-CV-00252)*
*Complaint*
*Page 2 of 8*

7.  Plaintiff's action seeks the refund of customs duties overpaid by reason of the refusal by Defendant to apply the "first sale rule" to entries of merchandise imported by the Plaintiff, a theory of customs valuation confirmed as legitimate and within the bounds of the law by the United States Court of Appeals for the Federal Circuit in <u>Nissho Iwai American Corp. v. United States</u>, 982 F.2d 505 (Fed. Cir. 1992), interpreting 19 U.S.C. § 1401a(b)(1), and recently reinforced in <u>Meyer Corp. v. United States</u>, 43 F.4th 1325 (Fed. Cir. August 11, 2022).

## PARTIES AND STANDING

8.  Plaintiff is a corporation organized under the law of Delaware and has its principal place of business in Parkersburg, West Virginia, United States.

9.  Plaintiff is the real party in interest because it acted as the importer of record of the merchandise that is subject of the contested Customs decision and paid all duties found to be due upon liquidation by Customs.

## FACTUAL BACKGROUND

10. Plaintiff operates woodworking specialty retail stores across the United States, and for the merchandise in question, purchased woodworking tools and related articles from its vendors in Taiwan, Asia Woodriver International Trade Company Limited and Woodriver International Trade Co., Ltd. ("the Woodriver Entities" or "Middlemen").

11. The sellers, the Woodriver Entities, purchase the requested articles from a variety of foreign sellers in Taiwan ("Foreign Sellers") and consolidate the goods for shipment to Woodcraft Supply, the U.S. importer and Plaintiff in this action.

12. Woodcraft Supply is not related to the Woodriver Entities within the meaning of 19 USC § 1401a(g).

13. The Woodriver Entities are not related to any of the multiple suppliers/manufacturers from who they have sourced the imported articles within the meaning of 19 U.S.C. § 1401a(g).

14. For the merchandise in question, Woodcraft Supply placed purchase orders for woodworking tools and hardware with the Woodriver Entities, who then source products for Woodcraft Supply from multiple factories located in Taiwan.

15. The manufacturers are selected solely by the Woodriver Entities without direction or input from Woodcraft Supply.

16. For the transactions regarding the subject merchandise, the imported merchandise is shipped from the factories to the Woodriver Entities for consolidation before shipment to Woodcraft Supply in the United States.

17. In determining the dutiable value of merchandise, the primary basis of appraisement is "transaction value," which is the price actually paid or payable for the merchandise when sold for exportation to the United States. See 19 U.S.C. § 1401a(b)(1).

18. In an international commercial transaction for the sale of goods, a transaction which contemplates a sale by a producer to a middleman, and resale by the middleman to the importer is known as a "three-tiered sale." (See <u>Nissho Iwai American Corp. v. U.S., supra</u>):

19. As the manufacturers are not related to the Woodriver Entities, there is a presumption that transactions between these parties are at arm's length.

20. The manufacturers were aware that the merchandise was destined for the U.S.

21. The Woodriver Entities act as independent buyers/sellers and not as agents for either Plaintiff or the unrelated manufacturers.

## BONA FIDE SALE OCCURRED WITHIN PROTEST 4103-20-100360

22. For Protest 4103-20-100360 (Entries AVZ-0240886-1 and AVZ-0240858-0), the Woodriver Entities acted as independent buyer/sellers when they placed their orders with the respective Vendors/Manufacturers in their own name.

23. The Woodriver Entities acted as independent buyers/sellers when they paid the respective vendors for the goods included within the subject transaction.

24. The Woodriver Entities acted as independent buyers/sellers when they assumed the risk of loss related to the subject transaction.

25. The shipping terms between the Woodriver Entities and the foreign factories was "FOB" which means the risk of loss and title remained with the foreign factory until the merchandise is trucked to a central location, stuffed in a container, and shipped to Woodcraft.

26. The Woodriver Entities acted as independent buyers/sellers when they acquired legal title to the goods from the foreign vendors.

27. The Woodriver Entities ordered the merchandise from the respective vendors after confirming the sale with Woodcraft.

28. Woodcraft's purchase orders to the Woodriver Entities did not identify the vendor/supplier.

29. A bona fide sale occurred in each of the instances between the vendor and the Woodriver Entities as evidenced by the shipping terms between the Woodriver Entities and the foreign factories that are clearly noted on each purchase order that the Woodriver Entities issues.

30.     Each purchase order notes "FOB Taichung" and the risk of loss and title remain with the foreign factory until the merchandise is trucked to a central location, stuffed in a container, and shipped to Woodcraft Supply.

31.     The shipping terms between the Woodriver Entities and Woodcraft Supply are "Stuffed at Port," where the Woodriver Entities maintains one hundred percent of the title for ownership of all goods and risk of damage or loss, until the goods are delivered by the Woodriver Entities to the designated port and subsequently Stuffed at Port.[1]

32.     Based on the shipping terms, title and risk of loss pass from the vendors to the Woodriver Entities, then immediately thereafter from the Woodriver Entities to the Woodcraft.

33.     The Woodriver Entities' actions were not under the control of either Woodcraft Supply or the Unrelated Vendors/Manufacturers.

34.     The Woodriver Entities were not selling agents for the vendors, and they were free to set their own resale prices for goods and merchandise.

35.     The Woodriver Entities resold the items in question at higher prices than they made the original purchase for (i.e., a profit was made).

36.     The Woodriver Entities selected their own customers without consulting the vendors.

37.     The Woodriver Entities ordered the imported merchandise and had it delivered for their own inventory.

---

[1] The term of art "Stuffed at Port" being defined herein as the full completion of said delivery and loading the goods onto the container ship, with no further action/steps required by the Woodriver Entities.

38. The Woodriver Entities initiated the transactions with the foreign vendors on their own behalf (i.e., choose the foreign factory).

39. The original purchase order from Woodcraft Supply to the Woodriver Entities only identified the products it wished to purchase and does not dictate which factory to use.[2]

40. The Woodriver Entities have complete discretion regarding both the purchase and the subsequent sale of the goods.

41. The Woodriver Entities were free to negotiate with the vendor regarding the terms of sale and the delivery of the goods, including risk of loss and transfer of title.

42. The Woodriver Entities had ultimate authority with respect to the resale of the goods, including to whom they sold the goods to, and for what price.

43. The Woodriver Entities provided all instructions to the seller regarding the merchandise, which is illustrated in the purchase orders between the Woodriver Entities and the foreign factories.

44. The Woodriver Entities always make a profit when they sell the merchandise to Woodcraft Supply.

45. The Woodriver Entities are not acting as a selling agent for the foreign factories for the transactions in question.

46. The Woodriver Entities are not acting as buying agents for Plaintiff Woodcraft for the transactions in question.

---

[2] Once the invoice is received by the Woodriver Entities, they often use multiple (in this case 14) factories at their choosing when placing the order.

47. Plaintiff Woodcraft has not provided the Woodriver Entities nor any foreign factories with any "statutory additions" within the meaning of 19 USC § 1401a(b)(1) and 19 USC § 1401a(h)(1).

48. The Woodriver Entities have not provided the foreign factories with any "statutory additions" within the meaning of 19 USC § 1401a(b)(1) and 19 USC § 1401a(h)(1).

49. The merchandise at issue herein was "clearly destined for exportation to the U.S." in accordance with Nissho as the purchase order from Woodcraft to the Woodriver Entities and the packing list from Woodriver indicates that the merchandise is to be shipped to West Virginia, USA.

50. Woodcraft has clearly established that these transactions are bona fide sales which supports that first sale appraisement may be used for the imported merchandise.

## CAUSE OF ACTION

51. Plaintiff repeats and realleges each of the facts recited in 1 through 50 above as if they had been fully set out herein.

52. An appraisement of imported merchandise at a transaction value represented by the price paid by the middleman to the producer is well established by Section 402 of the Trade Act of 1930 and *Nissho Iwai American Corp. v. United States*, 982 F.2d 505 (Fed. Cir. 1992), interpreting 19 U.S.C. § 1401a(b)(1), and recently reinforced in *Meyer Corp. v. United States*, 43 F.4th 1325 (Fed. Cir. August 11, 2022).

53. Plaintiff is entitled to an appraisement at transaction value, represented by the price paid or payable of the goods as sold by the foreign sellers, not the middlemen, and the

Defendant erred as a matter of law in denying the Plaintiff's protest because the transaction that gave rise to the protested entry satisfied the elements of the *Nissho Iwai* first sale test.

## **REQUEST FOR RELIEF**

**WHEREFORE,**

Plaintiff respectfully requests this Court to enter judgement in its favor as follows:

Hold that the merchandise in suit is properly appraised at its transaction value, and that the transaction value is represented by the price between the producer of the imported merchandise and the middlemen, also known as the "first sale price,"

Order Defendant to reliquidate the subject merchandise that is appraised at the "first sale value" within 30 days of this judgment becoming final, as provided by law,

Refund to Plaintiff all excess duties paid, together with interest and attorneys' fees as provided by law, and

For such other and further relief as the Court deems just.

Dated: August 16, 2023

Respectfully Submitted,

---

Adrienne Braumiller
Braumiller Law Group PLLC
5220 Spring Valley Rd., Suite 200
Dallas, Texas 75254
Tel. (214) 348-9306
Email: adrienne@braumillerlaw.com

*Attorney for Plaintiff Woodcraft Supply, LLC*